# UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| DAVID MICHAEL COMBS, | ) | |
| | ) | Case No. 14-51339-SCS |
| *Debtor.* | ) | |
| | ) | |
| STACY L. LAWRENCE, | ) | |
| | ) | APN 15-05009-SCS |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID MICHAEL COMBS, | ) | |
| | ) | Chapter 13 |
| *Defendant.* | ) | |
| | ) | |

## MEMORANDUM OPINION

This matter came on for trial on November 13, 2015, on the Complaint to Determine

Dischargeability of Debt (the "Complaint") filed by Stacy L. Lawrence ("Lawrence") on April 13,

2015, pursuant to 11 U.S.C. § 523 regarding claims against the debtor, David Michael Combs (the

"Debtor").  The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b) and

1334(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).  After the conclusion of the

presentation of evidence[1] and argument of the parties, the Court took the matter under advisement.

---

[1] Counsel for the parties agreed at the trial that the evidence presented regarding
Lawrence's Complaint should be considered a simultaneous presentation of evidence in support
of the parties' respective positions on the Motion for Relief from Automatic Stay ("Motion")
filed by Lawrence on September 29, 2015, against the Debtor in the underlying bankruptcy case.
Transcript of November 13, 2015 Trial at 43, Adv. Proc. No. 15-05009-SCS, ECF No. 19.  A
preliminary hearing was held on the Motion on November 6, 2015, at which time the Court
determined that a final hearing should be conducted on November 13, 2015, contemporaneous
with the previously scheduled trial in this matter.  By order entered November 19, 2015, the
Court granted the Motion in part, which allowed Lawrence to return to state court to pursue her

The Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

### I.  The Complaint

This Complaint arises from an apparently highly acrimonious divorce proceeding in the Circuit Court of the City of Williamsburg-James City County, Virginia (the "Divorce Proceeding") between Lawrence and the Debtor.  Complaint to Determine Dischargeability of Debt, ¶ 6, filed April 13, 2015, Adv. Proc. No. 15-05009-SCS, ECF No. 1 (hereinafter, "Compl.").  The goal of the Complaint is simple: "Lawrence has initiated this adversary proceeding seeking an order from the Bankruptcy Court declaring that the obligations owed by the Debtor to Lawrence as part of their divorce are of the nature of alimony, maintenance, and/or support and are therefore domestic support obligations ('DSO') pursuant to 11 U.S.C. § 101(14) [*sic*] and thus, nondischargeable under 11 U.S.C. § 523(a)(5)."  *Id.* ¶ 1.[2]  The state court entered a Final Decree of Divorce (the "Divorce Decree") on July 31, 2012, thereby terminating the parties' marriage.  *Id.* ¶ 7.  The state court thereafter entered an Equitable Distribution Order on May 30, 2014 (the "Order"), which Lawrence asserts includes awards in the nature of alimony, maintenance, or support.  *Id.* ¶¶ 8, 15.  Lawrence alleges the Divorce Decree and the Order establish a number of domestic support obligations, as that term is defined by the Bankruptcy Code, owed by the Debtor to her and that the sums are "essential

---

remedies there regarding the Debtor's alleged postpetition arrears regarding child support and medical expenses for the parties' minor child.  The Court withheld ruling on Lawrence's request for relief to return to state court regarding the Debtor's alleged failure to timely commence reimbursement payments for the parties' minor child's education fund, as the Debtor's obligation to reimburse this fund constitutes a portion of the claim that Lawrence seeks the Court to declare to be nondischargeable.

[2]  The term "domestic support obligation" is defined in § 101(14A) of Title 11, not § 101(14) as set forth in the Complaint.

to enable Lawrence to maintain basic necessities and/or to provide shelter" for her and the parties'

minor child, as follows:

1.      Support arrearage arising from a February 23, 2012 prepetition judgment entered against the Debtor in the amount of $1,452.27 ("February 23 Support").

2.      Spousal support arrearage resulting from a judgment entered by the state court pursuant to an order entered April 6, 2011, in the amount of $3,812.00 with interest at 6% per annum from July 16, 2013, through September 26, 2014, which equals $273.84, for a total of $4,085.84 ("April 6 Support").

3.      Spousal and child support arrearage from November 8, 2010, through February 17, 2011, totaling $6,293.13.  Lawrence asserts, "During the period of time the child support was $777.00 per month and spousal support was $1,130.00 per month for a total support obligation each month of $1,907.00.  The arrearage covers a period of 3 months and 9 days, with a per diem of $63.57, for a total of $6,293.13, and Lawrence was awarded a judgment in the amount of $6,293.13, plus the legal rate of interest from July 16, 2013." (Hereinafter, the "February 17 Support").[3]

4.      Division of 2010 tax refunds in the amount of $2,330.00, which Lawrence alleges represents spousal support.  (Hereinafter, the "Tax Division").[4]

5.      Division of retirement accounts and pension plans.  Lawrence was awarded $56,500.00 of the Debtor's retirement account with Anheuser-Busch and his Individual Retirement Accounts, which she alleges represents support ("Retirement Account Division").

6.      Reimbursement of L.E.C.'s[5] education fund ("Education Fund") in the amount of $12,750.00, which the Debtor was ordered to reimburse at a rate of $1,000.00 every six (6) months commencing January 1, 2015, and continuing on June 1 and January 1 of each year thereafter until L.E.C. turns eighteen (18) in 2019, when the remaining unpaid balance is due and payable in full ("Education Fund Reimbursement").

7.      Reimbursement of Lawrence for foreclosure avoidance costs she paid to Glasser & Glasser

---

[3] Despite the representation made in the Complaint, a review of the Order reveals that the provision for interest on this obligation was stricken from the Order.  Order at 2.

[4] Lawrence represented in the Complaint that she was awarded the legal rate of interest from July 16, 2013, on the Tax Division; however, the provision for interest on this obligation was stricken from the Order.  Order at 2.

[5] Pursuant to Federal Rule of Bankruptcy Procedure 9037, because the parties' child appears to be under the age of majority, the Court will refer to the child by initials only.

3

on property located at 3986 Bournemouth, Williamsburg, Virginia.  Lawrence was awarded a judgment in the amount of $12,923.76 ("Foreclosure Avoidance").

8.    Reimbursement for a payment made by Lawrence to Lytle Title, for which Lawrence was awarded a judgment in the amount of $7,500.00 ("Lytle Title Reimbursement").[6]

9.    The Debtor was ordered to pay Lawrence $58,000.00 representing the difference in the equity between properties located at 3986 Bournemouth and 3483 Fenwick Drive, both in Williamsburg, Virginia.  (Hereinafter, the "Equity Difference Payment").

10.    Rental income payment of $1,600.00 representing imputed rental income ("Rental Income Payment").

11.    Reimbursement of L.E.C.'s medical expenses in the amount of $3,949.12, representing ninety-three (93) percent of the uninsured medical and dental expenses incurred in the total amount of $4,496.37 ("Medical Expense Reimbursement").

12.    The balance due on an original garnishment of spousal support in the amount of $344.48 ("Garnishment Payment").

*See* Compl. ¶¶ 9, 13-14, 16, 19 (items 1-12 above are collectively referred to as the "Lawrence Claim").  Lawrence asserts the total amount of the domestic support obligation owed to her by the Debtor and not subject to discharge pursuant to 11 U.S.C. § 523(a)(5) is $167,728.60.  Compl. ¶¶ 9, 11, 20.[7]  The Complaint also prays for an award of attorney fees but fails to specify an amount certain, the circumstances supporting an award, or the basis for such an award.  *Id.* at 5 (prayer for relief).  In sum, Lawrence prays this Court declare that she holds a nondischargeable claim against the Debtor in an amount of not less than $167,728.60, along with interest, costs, and attorney fees.  *Id.*; *see also id.* at ¶ 20.  The Debtor answered the Complaint, denying that the entirety of the

---

[6]  Again, Lawrence represented in the Complaint that she was awarded the legal rate of interest from July 16, 2013, on the Lytle Title Reimbursement; however, the provision for interest on this reimbursement was stricken from the Order.  Order at 3.

[7]  Lawrence filed a proof of claim asserting a priority claim in the amount of $167,728.60 pursuant to 11 U.S.C. § 507(a)(1) on February 10, 2015.  Compl. ¶ 10.

Lawrence Claim constitutes a nondischargeable domestic support obligation.  Answer to Complaint ¶¶ 1, 8-9, 11, 13, 16, 18-19, filed May 15, 2015, Adv. Proc. No. 15-05009-SCS, ECF No. 6 (hereinafter, "Answer").  Accordingly, the Debtor asserts that the Lawrence Claim is dischargeable. *Id.* ¶ 20.

## II.  The Bankruptcy Filing

The Debtor filed his voluntary Chapter 13 petition on September 26, 2014 ("Bankruptcy Case").  Pet. filed September 26, 2014, Case No. 14-51339-SCS, ECF No. 1.  The Debtor scheduled various claims held by Lawrence as unsecured nonpriority debts, labeled as property settlements, and subject to discharge.[8]  On October 8, 2014, the Debtor filed his Chapter 13 Plan ("Plan") and related motions in the Bankruptcy Case.  The Plan provided for the payment of certain amounts, characterized as domestic support obligations, to Lawrence.  Specifically, Section 2.B. provided for payment of two amounts to Lawrence with priority status pursuant to 11 U.S.C. § 507, one in the amount of $3,949.00 and the other in the amount of $6,293.13.[9]  The Plan proposed to pay both amounts *pro rata* over 38 months.  Plan ¶ 2.B., filed October 8, 2014, Case No. 14-51339-SCS, ECF No. 11.  After resolution of an objection to the Plan filed by the Chapter 13 Trustee unrelated to the

---

[8]  The Debtor scheduled the following debts owed to Lawrence as property settlements, thereby taking the position that the debts are subject to discharge: the February 23 Support; the April 6 Support; the Tax Division; the Education Fund Reimbursement; the Foreclosure Avoidance; the Lytle Title Reimbursement; the Equity Difference Payment; and the Rental Income Payment.  *See* Pet., Schedule F, at 20-22, filed September 26, 2014, Case No. 14-51339-SCS, ECF No. 1.

[9]  The $3,949.00 claim amount corresponds most closely with the Medical Expense Reimbursement ($3,949.12).  *See* Compl. ¶ 9.  The claim in the amount of $6,293.13 corresponds with the February 17 Support claim.  *Id.*  The Debtor scheduled the February 17 Support and the Medical Expense Reimbursement as unsecured priority claims, taking the position that these debts represent domestic support obligations.  *See* Pet., Schedule E, at 17, filed September 26, 2014, Case No. 14-51339-SCS, ECF No. 1.

5

issues of the Complaint, an order was entered confirming the Plan on March 13, 2015. Order Confirming Plan, entered March 13, 2015, Case No. 14-51339-SCS, ECF No. 43; *see also* Order Settling Trustee's Objection to Confirmation of Plan, entered February 19, 2015, Case No. 14-51339-SCS, ECF No. 40.[10]

### III.  Findings of Fact

### A.  Conceded Domestic Support Obligations

Perhaps consistent with the apparent level of animosity in the Divorce Proceeding, Lawrence and the Debtor were unable to reach a factual stipulation. However, the Debtor concedes the following four obligations are in the nature of support and are not subject to discharge: (1) February 23 Support in the amount of $1,452.27; (2) April 6 Support in the amount of $4,085.84; (3) February 17 Support in the amount of $6,293.13; and (4) the Medical Expense Reimbursement in the amount of $3,949.12. (These items are collectively referred to as the "Conceded Support Payments."). Transcript of November 13, 2015 Trial at 5-7, ECF No. 19 (hereinafter, "Tr."). The Conceded Support Payments total $15,780.36. Accordingly, the Court determine these obligations to be nondischargeable.

### B.  Trial Testimony

The exhibits tendered by Lawrence were admitted without objection. Tr. at 43.[11]

---

[10]  Lawrence objected to confirmation of the Debtor's Plan, but her objection was filed more than a month after the deadline for objecting to the plan. *See* Objection to Confirmation filed January 12, 2015, Case No. 14-51339-SCS, ECF No. 27. Lawrence did not file a motion for leave to file a late objection.

[11]  Likewise, pursuant to the Pretrial Order entered by this Court on June 9, 2015, because Lawrence did not object to the Debtor's Exhibits, the Debtor's Exhibits also stand as admitted. *See* Pretrial Order at 1, entered June 9, 2015, Adv. Proc. No. 15-05009-SCS, ECF No. 8. The Debtor's Exhibits consist of the Divorce Decree and the Order, which duplicate Lawrence's

The testimony at trial was largely unhelpful in resolving the question of whether all, or some portion, of the Lawrence Claim (other than the Conceded Support Payments) is in the nature of alimony, maintenance, or support.  Instead, the witnesses were directed by counsel to rehash much of the sordid history of the Divorce Proceeding, which is not relevant to the issues raised in the Complaint.

Upon examination by Lawrence's counsel,[12] the Debtor testified that he and Lawrence were married in 1998, and their divorce was final in 2012. Tr. at 8, 34-35.  The Debtor presently resides at 3483 Frederick Drive, Toano, Virginia. *Id*. at 9.  The remainder of the Debtor's testimony largely involved the review of his bankruptcy schedules.  The Debtor has been employed by Anheuser-Busch since 2000 and has been a full-time employee since 2006. *Id*. at 25; *see also* Lawrence Exh. 1, Pet., Schedule I, filed September 26, 2014, Case No. 14-51339-SCS, ECF No. 1.  The Debtor confirmed his income from Anheuser-Busch was $87,793.22 in 2012; $102,001.32 in 2013; and, as of September 18, 2014, the Debtor had gross income of $88,110.70 for 2014.  Tr. at 26-28; *see also* Lawrence Exh. 1, Pet., Statement of Financial Affairs ¶ 1, filed September 26, 2014, Case No. 14-51339-SCS, ECF No. 1.  At the time of filing, the Debtor had an interest in a 401(k) account with Anheuser-Busch, LLC, valued at $102,607.79; and two (2) retirement accounts, one valued at $12,138.16,[13] and the second with a value of $7,219.25.  Tr. at 11.  The Debtor did not know the current values of these assets. *Id*. at 11-12, 17.

_____

Exhibits 3 and 4, respectively.

[12]  The Debtor took the witness stand twice, once as Lawrence's witness and once in support of his own case.

[13]  According to the Debtor's Schedule B, the asset listed with a value of $12,138.16 represents an aggregate value of two (2) accounts.  Lawrence Exh. 1, Pet., Schedule B, filed September 26, 2014, Case No. 14-51339-SCS, ECF No. 1.

The Debtor reiterated his contention that all portions of the Lawrence Claim listed in his Schedule F are not in the nature of alimony, maintenance, or support. *See id*. at 20-24. When asked why certain of the components of the Lawrence Claim (specifically, the February 23 Support; the April 6 Support; the February 17 Support; and the Tax Division) had not been paid, the Debtor asserted that he used any funds he had to pay his spousal and child support obligations and arrearages thereon, as well as other bills he owed. *Id*. at 38-40. The Debtor likewise declared that he did not have the funds available to pay Lawrence the Equity Difference Payment. *Id*. at 40.

The Debtor confirmed he was represented by counsel in the Divorce Proceeding. *Id*. at 35, 38; *see also id*. at 82; Lawrence Exh. 3, Divorce Decree entered July 31, 2012, by the Circuit Court of the City of Williamsburg-James City County, Virginia (hereinafter, "Divorce Decree"); Lawrence Exh. 4, Equitable Distribution Order entered May 30, 2014, by the Circuit Court of the City of Williamsburg-James City County, Virginia (hereinafter, "Order"). The Debtor acknowledged the Divorce Decree awarded primary custody of L.E.C., the only child of the marriage, to Lawrence. Tr. at 35-36. Under the provisions of the Divorce Decree, the Debtor's obligation to pay Lawrence spousal support terminated when Lawrence married her current spouse, Winston R. Lawrence ("Mr. Lawrence"). *Id*. at 37.

The remainder of the Debtor's testimony addressed his scheduled and current assets and his claims against Lawrence, her current husband, and Lawrence's mother. *See id*. at 16-20, 29-34, 39-42.

Mr. Lawrence testified that he assisted Lawrence extensively during the Divorce Proceeding because of her total disability caused by an auto-immune disease, which is triggered by stress, and rheumatoid arthritis, which limits her ability to walk long distances. *Id*. at 44, 46, 58-59; *see also*

Lawrence Exh. 7, Stacy L. Lawrence Disability Information.  Lawrence's sole income consists of Social Security disability payments.  Tr. at 51.  According to Mr. Lawrence, Lawrence has not worked for an extended time.  *Id*. at 59.  Contrary to the Debtor's testimony, *see id*. at 27-28, Lawrence has never worked for Mr. Lawrence's business (which Mr. Lawrence described as "lend[ing] people money to flip houses"), and he has never paid her a salary.  *Id*. at 50.

Mr. Lawrence handles the couple's household finances.  *Id*. at 49-50, 58.  He calculated the postpetition amounts allegedly owed by the Debtor to Lawrence, concluding the Debtor was two months delinquent in his child support payments, *id*. at 52-53, 55-56, and that the Debtor owed Lawrence $7,058.38, representing the Debtor's obligation to pay ninety-three (93) percent of L.E.C.'s medical expenses.  *Id*. at 57-58; *see also* Lawrence Exh. 6, Summary of Support Arrearages.[14]

Mr. Lawrence identified attorney fees accrued by Lawrence during the Divorce Proceeding.  Tr. at 48-49.  The Debtor was ordered to pay $3,500.00 of Lawrence's attorney fees; according to Mr. Lawrence, these fees remain unpaid.  *Id*. at 49; Order at 5.  Lawrence tendered into evidence Exhibit 8, a proof of claim for attorney fees filed February 10, 2015, by Thomas K. Norment Jr., Esquire ("Norment"), for $3,500.00 (the "Norment Claim").  Lawrence Exh. 8, Proof of Claim for Attorneys' Fees of $3,500.00 filed February 10, 2015.  Paragraph 15 of the Order provides the Debtor had previously been ordered to pay Norment $500.00, which was unpaid at the time of entry of the Order; the Debtor was additionally ordered to pay Norment $3,000.00 for attorney fees incurred for the May 28, 2014 state court proceeding.  *See* Order at 5.

---

[14]  Lawrence testified that, one to two weeks prior to trial, he prepared the portion of Exhibit 6 related to the Debtor's child support payments by comparing his records with those supplied by the Debtor's Divorce Proceeding counsel.  *See* Tr. at 52-54.

Mr. Lawrence additionally testified that Lawrence had incurred attorney's fees totaling $19,530.00 related to the Debtor's bankruptcy proceedings ("Bankruptcy Fees") since September 24, 2015. Tr. at 49. No further specificity was provided, and no documentary evidence of the Bankruptcy Fees was introduced. Mr. Lawrence testified that the alleged domestic support obligations listed in Exhibit 5 (which document was prepared by Lawrence's attorney, *see id*. at 47) did not include the Norment Claim, nor did it include the Bankruptcy Fees. *Id*. at 47-49; *see* Order at 5; Lawrence Exh. 5, Domestic Support Obligations Summary. Mr. Lawrence agreed with Lawrence's counsel that the Norment Claim "would be added to" the total amount Lawrence claimed to be nondischargeable ($167,728.60). Tr. at 49.

Lawrence was the third witness. She testified she has been disabled since 2002 or 2003, receives disability income from the Social Security Administration, and has never worked for Mr. Lawrence. *Id*. at 67, 69-70. Lawrence asserted that the elements of her claim were all in the nature of support, the payment of which was essential to maintaining her and her daughter's lifestyle. *Id*. at 68-69. Lawrence's financial condition, both previously and currently, was poor. *Id*. at 67, 74. Lawrence experienced difficulty sustaining her and her daughter's lifestyle due to the Debtor's failure to fulfill his obligations as set forth in the Order. *See id*. at 66-72, 74. She and Mr. Lawrence had to borrow money to pay for their household expenses. *Id*. at 71-72. Lawrence further testified that her home had been the subject of foreclosure proceedings on multiple occasions because the Debtor failed to pay the mortgage. *Id*. at 72.

Lawrence was represented by counsel throughout the Divorce Proceeding. *Id*. at 65, 76-77. The amounts ordered in the Divorce Decree and the Order to be paid by the Debtor were solely judicial determinations, as she and the Debtor never reached any voluntary agreements regarding

10

the amounts to be paid during the Divorce Proceeding. *Id.* at 77.

On direct examination by his own counsel, the Debtor stated he was current in his child support payments. *Id.* at 79. His spousal support payments terminated in August 2012 when Lawrence married Mr. Lawrence. *Id.* at 80-81. The Debtor confirmed that neither he nor Lawrence voluntarily agreed to any of the provisions of the Order. *Id.* at 81. The Debtor testified the terms of the Order were intended as equitable distribution and property division provisions, *id.* at 83, 85-86, 90; he did concede, however, that certain of the Order's obligations constitute support. *Id.* at 83-84 (referring to the four Conceded Support Payments—February 23 Support; April 6 Support; February 17 Support; Medical Expense Reimbursement); *see* Order at 2, 5. When specifically asked about the intention of a reimbursement for Lytle Title listed in the Order, the Debtor asserted this provision constituted a property division, representing equity from a home he and Lawrence sold. Tr. at 86; *see* Order at 3.[15]

On cross-examination by Lawrence's counsel, the Debtor testified that he used the funds withdrawn from the Education Fund to pay court-ordered spousal and child support obligations and mortgage payments. Tr. at 91. During his redirect testimony, the Debtor recounted that his monthly financial obligations in 2011 when he withdrew money from L.E.C.'s Education Fund included $1,129.00 for spousal support; $777.00 for child support; the mortgage payment for Lawrence's home in the amount of $2,100.00; a mortgage payment of $1,550.00 for the home in which he currently lives; the mortgage payment for a rental property owned by the Debtor, in which there were no renters, of $1,500.00; and a rent payment of $500.00 for the Debtor's residence at that time. *Id.* at 92-94. The Debtor had a gross monthly salary of $8,000.00, with a net salary of $4,500.00

---

[15] During examination by Lawrence's counsel, the Debtor referred to this obligation as relating to an "escrow issue." Tr. at 41.

monthly at that time.  The Debtor testified he "had to take that money [from the Education Fund]" to make his court-ordered payments because he was at risk of being sent to jail if he failed to make the payments.  *Id*. at 94.

The Debtor and his former mother-in-law, Joan E. Roberts, offered conflicting testimony concerning the origin of the deposits into L.E.C.'s Education Fund, *see id*. at 90-92, 97-99, but it appears undisputed that the Debtor removed monies from the fund and expended them for purposes other than L.E.C.'s education.  *Id*. at 91; *see also id*. at 97.  The Debtor does not dispute that the Order requires him to reimburse the Education Fund.  *Id*. at 90.  According to Ms. Roberts, the Debtor has not commenced repayment of the Education Fund as directed by the Order.  *Id*. at 98; *see* Order at 3.

Accordingly, the oral testimony by the Debtor, Lawrence, Mr. Lawrence, and Ms. Roberts provides *de minimis* insight into resolving the issues presented here.  Further, the Court is presented with two anomalies from the Divorce Proceeding that distinguish this from any prior case adjudicated by this Court.  First, none of the provisions of either the Divorce Decree or the Order resulted from any voluntary agreement between the divorcing spouses; instead, the provisions of both orders were solely the product of judicial determination.  Second, the Debtor's obligations are the product of two distinct orders, with entry of the Divorce Decree separated temporally by nearly two years from the entry of the subsequent Order.

## C.  The Divorce Decree and the Order

The most influential of the parties' exhibits in resolving the issues here are the Divorce Decree and the Order.  The Divorce Decree was entered by the state court on July 31, 2012, on a

*nunc pro tunc* basis.[16]  Divorce Decree at 9.  The Divorce Decree terminated the marriage of the

Debtor and Lawrence and awarded custody of their minor child, L.E.C., to Lawrence.  *Id*. at 2.  The

Divorce Decree also provided for payment by the Debtor of child support; spousal support; support

arrearages; health care coverage for Lawrence and L.E.C. (including the Debtor's obligation to pay

ninety-three (93) percent of L.E.C.'s unreimbursed medical expenses); and certain mortgages.  *Id*.

at 3-5, 7.  The state court reserved a number of issues in the Divorce Proceeding for subsequent

determination, including equitable distribution; retroactive spousal and child support; the

outstanding amount of L.E.C.'s unreimbursed medical expenses; maintenance of life insurance on

the Debtor for L.E.C.'s  benefit; transfer of L.E.C.'s Education Fund and savings account; and

whether 2010 and 2011 tax returns for the Debtor and Lawrence had been filed.  *Id*. at 8-9.

The Order, entitled "Equitable Distribution Order," was not entered until May 30, 2014.

Order at 1, 6.  The related proceeding commenced on May 28, 2013, and was continued to July 16,

2013.  *Id*. at 1.  A subsequent hearing was conducted on May 28, 2014, "not [as] an evidentiary

hearing, but a hearing to clarify the Court's previous rulings on equitable distribution at the hearings

on May 28, 2013, and July 16, 2013."  *Id*.  The findings embodied in the Order "were previously

made and reaffirmed by the Court on [May 30, 2014]."  *Id*.  The Order provides, in successive

paragraphs, for the February 23 Support; the April 6 Support; the February 17 Support; the Tax

Division; the Retirement Account Division; the Education Fund Reimbursement; the Foreclosure

Avoidance; the Lytle Title Reimbursement; the award of the 3986 Bournemouth, Williamsburg,

Virginia property to Lawrence; the award of the 3483 Fenwick Drive, Williamsburg, Virginia

property to the Debtor; the Equity Difference Payment; the Rental Income Payment; the Medical

---

[16]  Neither party provided any explanation for entry of the Divorce Decree on a *nunc pro tunc* basis.

Expense Reimbursement; guardian *ad litem* fees; attorney fees; and the Garnishment Payment.

Order at 2-5.  The Order concludes by closing the Divorce Proceeding.  Order at 6.

### IV.  Conclusions of Law

### A.  The Bankruptcy Code

Section 1328 governs the dischargeability of debts in Chapter 13 bankruptcy proceedings:

> (a) Subject to [§ 1328](d), as soon as practicable after completion by the debtor of all payments under the plan, and in the case of a debtor who is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, after such debtor certifies that all amounts payable under such order or such statute that are due on or before the date of the certification (including amounts due before the petition was filed, but only to the extent provided for by the plan) have been paid, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—
> . . . .
>
> > (2) of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a) . . . .

11 U.S.C. § 1328(a) (2015).  Section 523(a)(5) precludes from discharge any debt "for a domestic support obligation," which is defined by § 101(14A):

> The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—
>
> > (A) owed to or recoverable by—
> >
> > > (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
> > >
> > > (ii) a governmental unit;
> >
> > (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former

14

spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—

(i) a separation agreement, divorce decree, or property settlement agreement;

(ii) an order of a court of record; or

(iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

*Id.* § 101(14A).

While debts representing domestic support obligations are nondischargeable in a Chapter 13 bankruptcy proceeding, debts within the scope of § 523(a)(15) are not excepted from discharge under § 1328(a).  In contrast to § 523(a)(5), debt under § 523(a)(15) is owed

to a spouse, former spouse, or child of the debtor and not of the kind described in [§ 523(a)(5)] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit[.]

*Id.* § 523(a)(15).  Thus, debts arising from, among other things, equitable distribution orders and property settlement agreements upon the dissolution of a marriage may be dischargeable if such debts do not constitute domestic support obligations.  *See id.*; *see also id.* § 523(a)(5); *Pagels v. Pagels* (*In re Pagels*), Adv. Proc. No. 10-07070-SCS, 2011 WL 577337, at *6 (Bankr. E.D. Va. Feb. 9, 2011).

15

This Court has surveyed the law in this circuit for determining whether claims against a debtor are in the nature of alimony, maintenance, or support pursuant to § 523(a)(5) in numerous cases, including *Pagels v. Pagels* (*In re Pagels*), Adv. Proc. No. 10-07070-SCS, 2011 WL 577337 (Bankr. E.D. Va. Feb. 9, 2011), and *Brunson v. Austin* (*In re Austin*), 271 B.R. 97 (Bankr. E.D. Va. 2001). The characterization of marital debt is critical to the determination of discharge: "If the subject debt is a § 523(a)(15) debt, the debt is dischargeable in the Defendant's Chapter 13 bankruptcy proceeding under § 1328(a). If the subject debt is a § 523(a)(5) debt, the debt is nondischargeable in the Defendant's Chapter 13 bankruptcy proceeding pursuant to §§ 523(a)(5) and 1328(a)." *In re Pagels*, 2011 WL 577337, at *6. The non-debtor spouse (in this case, Lawrence) has the burden to demonstrate, by a preponderance of the evidence, that her claims are in the nature of alimony, maintenance, or support. *Grogan v. Garner*, 498 U.S. 279, 287 (1991); *Tilley v. Jessee*, 789 F.2d 1074, 1077 (4th Cir. 1986); *Beaton v. Zerbe* (*In re Zerbe*), 161 B.R. 939, 940 (E.D. Va. 1994).

The Lawrence Claim satisfies subsections (A), (C), and (D) of 11 U.S.C. § 101(14A). While the Debtor denies that the entirety of the Lawrence Claim is owed to or recoverable by Lawrence, *see* Answer ¶ 14, the Divorce Decree entered by the Circuit Court of the City of Williamsburg-James City County on July 31, 2012, as well as the Order, entered by the same court on May 30, 2014, both clearly set forth that the Debtor owes the components of the Lawrence Claim to Lawrence, the Debtor's former spouse. Thus, the Court finds that the debt is recoverable by Lawrence as required by § 101(14A)(A). It is undisputed that the debt was established by an order of the state court before the date of the order for relief in the Debtor's Bankruptcy Case on September 26, 2014, thus satisfying § 101(14A)(C). The Debtor asserted in his Answer that he has insufficient knowledge as

16

to whether the Lawrence Claim has been assigned. Answer ¶ 17. Nothing in the record indicates

that the debt has been assigned, and, therefore, the Court finds that § 101(14A)(D) is satisfied here.

Therefore, the sole remaining element of § 101(14A) at issue regarding the remaining eight (8)

contested components of the Lawrence Claim is that in subsection (B), whether these components

are in the nature of alimony, maintenance, or support.

### B.  Fourth Circuit Case Law

Judge Waldrep of the United States Bankruptcy Court for the Middle District of North

Carolina provided a thorough analysis of the standards commonly utilized by Fourth Circuit courts

to determine whether an obligation constitutes a domestic support obligation in *In re Johnson*, 397

B.R. 289 (Bankr. M.D.N.C. 2008). The analysis for determining whether an obligation is in the

nature of alimony, maintenance, or support is fact-specific and dependent on federal bankruptcy law,

not state law.  *In re Johnson*, 397 B.R. 289, 296 (Bankr. M.D.N.C. 2008) (citing *Strickland v.*

*Shannon* (*In re Strickland*), 90 F.3d 444, 446 (11th Cir. 1996); *Yeates v. Yeates* (*In re Yeates*), 807

F.2d 874 (10th Cir. 1986); *Long v. West* (*In re Long*), 794 F.2d 928 (4th Cir. 1986); *Adams v.*

*Council, Baradel, Kosmerl & Nolan, P.A.* (*In re Adams*), 254 B.R. 857, 861 (D. Md. 2000); *Catron*

*v. Catron* (*In re Catron*), 164 B.R. 912, 918-19 (E.D. Va. 1994), *aff'd*, 43 F.3d 1465 (4th Cir. 1994);

*Nelson, Keys & Keys, P.C. v. Hudson* (*In re Hudson*), Adv. No. 07-8011, 2007 WL 4219421, at *1

(Bankr. C.D. Ill. Nov. 27, 2007); *Brunson v. Austin* (*In re Austin*), 271 B.R. 97, 106 (Bankr. E.D.

Va. 2001); *Baker v. Baker* (*In re Baker*), 274 B.R. 176, 188 (Bankr. D.S.C. 2000)). When analyzing

whether an obligation serves as alimony, maintenance, or support under bankruptcy law, Judge

Waldrep points out that the bankruptcy court "must not rely on the label used by the parties or the

state court, but must look beyond the label to examine whether the debt actually is in the nature of

support or alimony." *Id.* (citing *Cummings v. Cummings*, 244 F.3d 1263, 1265 (11th Cir. 2001);

*Brody v. Brody* (*In re Brody*), 3 F.3d 35, 38 (2d Cir. 1993)). Judge Waldrep further instructs:

> [Domestic support obligation] is a term derived from the definition of a nondischargeable debt for alimony, maintenance, and support contained in the former Section 523(a)(5); therefore, case law construing the former Section 523(a)(5) is relevant and persuasive. *Hudson*, 2007 WL 4219421, at *1; *In re Lepley*, No. 07-20344, 2007 WL 2669128, at *2 (Bankr. W.D. Mo. Sept. 6, 2007); *In re Knox*, No. 07-11082, 2007 WL 1541957, at *1 (Bankr. E.D. Tenn. May 23, 2007); *see In the Matter of Dankert*, No. 07-40109, slip op. at 3 (Bankr. D. Neb. Sept. 27, 2007) (stating that BAPCPA did not change the standard for whether an obligation is in the nature of support).

> In the Fourth Circuit, courts first look at the mutual or shared intent of the parties to create a support obligation. *Tilley*, 789 F.2d at 1078 (stating that intent is the threshold that must be crossed before any other concerns become relevant); *see In re Yeates*, 807 F.2d 874, 878 (10th Cir. 1986); *Long v. Calhoun* (*In re Calhoun*), 715 F.2d 1103, 1109-10 (6th Cir. 1983) (showing that the initial inquiry is to determine whether there was intent to create support). The court should look at the parties' intent at the time of the divorce or separation. *E.g.*, *Brody*, 3 F.3d at 38; *Tilley*, 789 F.2d at 1077; *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir. 1984). The labels attached to certain provisions in a separation agreement are not dispositive of their "nature," but the labels are persuasive evidence of the parties' intent. *Tilley*, 789 F.2d at 1077-78 (a label in the agreement erects a "substantial obstacle" for the party seeking to overcome it); *Catron*, 43 F.3d at 2.

> Courts of the Fourth Circuit have articulated an "unofficial" test for the intent inquiry, which provides for the court to look at: (1) the actual substance and language of the agreement, (2) the financial situation of the parties at the time of the agreement, (3) the function served by the obligation at the time of the agreement (*i.e.* daily necessities), and (4) whether there is any evidence of overbearing at the time of the agreement that should cause the court to question the intent of a spouse. *Catron*, 164 B.R. at 919 (citing *Kettner v. Kettner*, No. 91-587-N, 1991 WL 549386 (E.D. Va. Nov. 19, 1991)) (the Fourth Circuit noted that approval of the use of these factors did not preclude the use of other formulae). Furthermore, because this list is non-exclusive and the inquiry is fact intensive, courts should consider all relevant evidence. *Lepley*, No. 07-20344, 2007 WL 2669128, at *3. Ultimately, courts may look beyond the four corners of a divorce decree or the agreement of the parties to determine the nature of the payments constituting the debts sought to be discharged. *In re Cribb*, 34 B.R. 862, 864 (Bankr. D.S.C. 1983); *see also In re Bristow*, No. 04-50235, 2005 WL 1321996, *1-2 (Bankr. M.D.N.C. April 22, 2005).

*In re Johnson*, 397 B.R. at 296-97 (footnotes omitted).

To determine the parties' intent, the Court will consider the four factors established in *In re Catron*, discussed in *In re Johnson*, and utilized by this Court in numerous other cases, including *In re Pagels* and *In re Austin*:  (i) whether there is any evidence of overbearing at the time the Divorce Decree and Order were entered; (ii) the actual language and substance of the Divorce Decree and Order; (iii) the financial situation of the parties at the time the Divorce Decree and Order were entered; and (iv) the function served by the obligations set forth in the Divorce Decree and Order. *See Catron v. Catron* (*In re Catron*), 164 B.R. 912, 919 (E.D. Va. 1994), *aff'd*, 43 F.3d 1465 (4th Cir. 1994) (unpublished table decision); *In re Pagels*, 2011 WL 577337, at *10; *In re Austin*, 271 B.R. at 106 (citing *In re Crosby*, 229 B.R. 679, 681 (Bankr. E.D. Va. 1998)).

As to each factor, the Court must undertake a number of considerations.  In *Kettner v. Kettner*, Civ. A. No. 91-587-N, 1991 WL 549386 (E.D. Va. Nov. 19, 1991), Judge Clarke wrote that if a spouse has suffered overreaching as a result of the other spouse's actions, the court should question the actions and intent of the overreaching spouse.  Judge Clarke provided wisdom as to undertaking such a determination:

> In determining whether a spouse's will has been overborne, the court should consider whether both parties were represented by an attorney, whether the terms of the agreement grossly favor one spouse over the other or leave one spouse with virtually no income, the statements of the spouses in court, the age, health, intelligence and experience of the spouses, the bargaining positions of the parties, whether there were any misrepresentations, and whether the creditor spouse had knowledge of the debtor spouse's weakness or inability to fulfill the terms of the agreement.

*Kettner v. Kettner*, Civ. A. No. 91-587-N, 1991 WL 549386, at *2 (E.D. Va. Nov. 19, 1991).

When examining the actual language and substance of the agreement, "the Court should be cognizant of the context in which the obligation arises under the agreement." *In re Austin*, 271 B.R. at 106 (citing *In re Catron*, 164 B.R. at 919; *Grasmann v. Grasmann* (*In re Grasmann*), 156 B.R.

903, 908 (Bankr. E.D.N.Y. 1992)).  While the Court should consider the label given to an obligation, the Court is not bound by such designation, as any such label may not indicate the true nature of the obligation.  *Tilley v. Jessee*, 789 F.2d 1074, 1077-78 (4th Cir. 1986); *Kettner*, 1991 WL 549386, at *1; *see also In re Austin*, 271 B.R. at 106-07 (quoting *Garza v. Garza* (*In re Garza*), 217 B.R. 197, 201 (Bankr. N.D. Tex. 1998); *In re Grasmann*, 156 B.R. at 908).  The Court should take into account how the obligation is to be paid (whether in a lump sum or over a period of time) and whether the payment is to be made directly to the spouse or to a third party.  *In re Catron*, 164 B.R. at 919; *Kettner*, 1991 WL 549386, at *1.  The Court may also consider any tax ramifications resulting from the obligation and any termination provisions regarding the obligation.  *In re Catron*, 164 B.R. at 919; *Kettner*, 1991 WL 549386, at *1; *In re Pagels*, 2011 WL 577337, at *10 (quoting *In re Austin*, 271 B.R. at 106-07).

When considering the parties' financial situation, the Court should compare each party's work history, experience, and ability; income stability, potential, and opportunities; physical health; and future income needs.  *In re Austin*, 271 B.R. at 107-08 (citing *In re Catron*, 164 B.R. at 919; *Bedingfield v. Bedingfield* (*In re Bedingfield*), 42 B.R. 641, 647 (S.D. Ga. 1983); *In re Grasmann*, 156 B.R. at 908; *Zaera v. Raff* (*In re Raff*), 93 B.R. 41, 47 (Bankr. S.D.N.Y. 1988)).   In the present case, because the parties have a minor child, the Court will also consider the fact that Lawrence has primary custody of the child.  *In re Catron*, 164 B.R. at 919; *Kettner*, 1991 WL 549386, at *2.

Evaluating the role the obligation was intended to perform involves examination of numerous factors concerning both the parties' past and future circumstances, including how long the parties were married; whether either party was at fault in the marriage; whether the parties had any children; and the parties' standard of living during the marriage.  *See In re Catron*, 164 B.R. at

20

919; *Kettner*, 1991 WL 549386, at *2 (citing *Stone v. Stone* (*In re Stone*), 79 B.R. 633 (Bankr. D. Md. 1987); *In re Austin*, 271 B.R. at 108 (citing *Peterson v. Peterson* (*In re Peterson*), 133 B.R. 508, 512 (Bankr. W.D. Mo. 1991); *In re Raff*, 93 B.R. at 47). The Court will also consider if the obligation arises from a past or future commitment and whether it represents an allocation of debt or a division of property. *In re Austin*, 271 B.R. at 108 (citing *In re Peterson*, 133 B.R. at 512-13). Finally, the Court will assess if the obligation was intended to provide daily necessities, "whether the award was intended to balance a disparity in incomes, and whether, without the debt at issue, the support award would have been sufficient . . . ." *Id.* (citing *Baker v. Baker* (*In re Baker*), 146 B.R. 862, 866 (Bankr. M.D. Fla. 1992); *In re Grasmann*, 156 B.R. at 908; *In re Peterson*, 133 B.R. at 512; *In re Raff*, 93 B.R. at 47).

## C.  Attorney's Fees

Attorney fees awarded in connection with divorce proceedings can be determined to be nondischargeable under § 523(a)(5). *See Silansky v. Brodsky, Greenblatt & Renehan* (*In re Silansky*), 897 F.2d 743, 745 (4th Cir. 1990) (concluding that attorney fees owed by the debtor to the former spouse's attorney arising from their divorce proceeding was nondischargeable). Courts reach such a conclusion where the obligation underlying the award of attorney fees is also nondischargeable. *Beaton v. Zerbe* (*In re Zerbe*), 161 B.R. 939, 940-41 (E.D. Va. 1994); *see also Ewing v. Ewing* (*In re Ewing*), 180 B.R. 443, 446 (Bankr. E.D. Va. 1994) ("The majority rule among Bankruptcy Courts is that an obligation to pay attorneys' fees is 'so tied in with the obligation of support as to be in the nature of support or alimony and excepted from discharge.'") (quoting *Romano v. Romano* (*In re Romano*), 27 B.R. 36, 38 (Bankr. M.D. Fla. 1983)); *Crooks v. Crooks* (*In re Crooks*), Adv. No. 94-3053-S, 1994 WL 16191547, at *2 (Bankr. E.D. Va. Oct. 13, 1994).

Courts contrast the potentially nondischargeable attorney fees awarded in underlying state court matters with fees related to the adversary proceeding to establish the nondischargeability of that certain debt. Courts in this circuit and others have awarded attorney fees incurred for pursuing a nondischargeability action on the basis of language contained in either the operative agreement entered into by the parties or in the underlying state court order providing for such fees in the event of an enforcement action. *See, e.g.*, *Shaver v. Shaver* (*In re Shaver*), Adv. No. 14-05005, 2014 WL 3849687, at *4 (Bankr. W.D. Va. Aug. 5, 2014) (finding that the property settlement agreement entered into by the parties permitted the recovery of reasonable attorney fees incurred by the nondefaulting party to enforce the agreement against the defaulting party); *Rolle v. Wolohan* (*In re Wolohan*), Adv. No. 11-00984, 2012 WL 3561784, at *3 (Bankr. D. Md. Aug. 16, 2012) (awarding attorney fees incurred for the nondischargeability action based upon a provision in the separation agreement allowing the recovery of such fees in the event of default in fulfilling the obligations under the agreement); *Bevins v. Ballard* (*In re Ballard*), Adv. No. 09-5256, 2011 WL 2133529, at *3 (Bankr. E.D. Ky. May 25, 2011) (concluding that the property settlement provided for the debtor to indemnify the former spouse for attorney fees if the debtor failed to abide by the terms of the agreement); *Gilman v. Golio* (*In re Golio*), 393 B.R. 56, 63 (Bankr. E.D.N.Y. 2008) (settlement agreement and order of divorce permitted spouse to recover attorney fees for non-compliance).

The award of attorney fees for pursuing a nondischargeability action where the underlying agreement or order provides for such fees in the event enforcement for noncompliance is necessary comports with the American Rule. However, in the absence of contemplation of such fees, the American Rule prohibits such award in nondischargeability actions. Judge Kahn has discussed the American Rule vis-à-vis nondischargeability actions.

> Under the American Rule, each party bears the cost of litigation absent statutory authority or an enforceable contractual agreement to the contrary. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247-48, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *MR Crescent City, LLC v. Draper* (*In re Crescent City Estates, LLC*), 588 F.3d 822, 825 (4th Cir. 2009). Courts generally agree that there is "[n]o statutory basis in the Bankruptcy Code that provides generally for attorney's fees for a prevailing creditor in a § 523 action," *James R. Barnard, D.D.S., Inc. v. Silva* (*In re Silva*), 125 B.R. 28, 30 (Bankr. C.D. Cal. 1991). *See, e.g.*, *McCoun v. Rea* (*In re Rea*), 245 B.R. 77, 90 (Bankr. N.D. Tex. 2000) ("The Bankruptcy Code does not provide for the recovery of attorney's fees for dischargeability litigation."). . . .
>
> It is unnecessary in this case for the Court to decide whether, in an appropriate case, the Court might award attorneys' fees to the prevailing party in a non-dischargeability proceeding where the underlying state cause of action authorizes the award of such fees. The State Court Judgment adjudicated the underlying claims fully (and awarded substantial attorneys' fees), and the only relief sought in this Court was a determination of dischargeability. This is a purely federal question, and, therefore, to the extent that the Plaintiff seeks fees in this action, it only can be in connection with the federal dischargeability determination, rather than pursuant to the underlying claims for which the Plaintiff already was awarded fees by the State Court. Moreover, even if Section 523 provided a mechanism for the award of attorneys' fees, which it does not, the Plaintiff has not provided the Court with any evidence from which the Court could allocate such fees. *See Soler v. United States* (*In re Soler*), 261 B.R. 444, 464 (Bankr. D. Minn. 2001) (denying request of the United States for attorney fees and costs, despite determination that debtor's student loan obligations were non-dischargeable, because the United States did not provide any basis for or evidence for such an award). Finally, the plaintiff's request for an award of attorney's fees exceeds the scope of the Complaint, which contains a prayer solely for an award of the costs of the action. The Court therefore denies the Motions for Summary Judgment with respect to the request for attorneys' fees.

*Thomas v. Causey* (*In re Causey*), 519 B.R. 144, 155-56 (Bankr. M.D.N.C. 2014); *see also Wells Fargo Bank v. Stalsitz* (*In re Stalsitz*), Adv. Proc. No. 13-00021-8-ATS, 2013 WL 5431588, at *3 (Bankr. E.D.N.C. Sept. 30, 2013) (finding there is no provision within the Bankruptcy Code to permit an award of attorney fees to the plaintiff in a nondischargeability action); *Elrod v. Bowden* (*In re Bowden*), 326 B.R. 62, 97 (Bankr. E.D. Va. 2005) (discussing the American Rule and finding that in Virginia, an award of attorney's fees generally must be supported by statute or contract)

(citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247-48 (1975); *Prospect Dev. Co. v. Bershader*, 515 S.E.2d 291, 300 (Va. 1999)); *Chance v. White* (*In re White*), 265 B.R. 547, 560 (Bankr. N.D. Tex. 2001) ("Under the 'American Rule,' in cases brought under federal law, attorneys' fees are not ordinarily recoverable absent specific statutory authority, a contractual right, or aggravated conduct.").

D.  Are the Subject Obligations in the Nature of Alimony, Maintenance, or Support?

Application of the *Catron* factors to the instant case is complicated by the multiple components of the Lawrence Claim; accordingly, the Court will bifurcate its analysis.  First, the Court will consider the factors that are common to all of the elements of the Lawrence Claim, and then the Court will apply the remaining factors to each component respectively.

1.  Analysis of the *Catron* Factors Common to All Contested Elements of the Lawrence Claim

a.  Overreaching

Applicable to all of the contested portions of the Lawrence Claim, there is no evidence of overreaching by either the Debtor or Lawrence.  Both were represented by counsel in the Divorce Proceeding.  The Court has thoroughly reviewed the terms of the Divorce Decree and the Order, and neither order grossly favors one spouse over the other nor leaves one spouse with virtually no income.  It is doubtless, as the Debtor testified, that his required payments to Lawrence under the Divorce Decree and the Order were substantial and difficult; however, these payments were judicially determined, and there is nothing in this record to establish the payments or provisions of the orders were sufficiently unfair or onerous to constitute overreaching.

There is no evidence of what occurred, including any testimony given, in the Divorce Proceeding other than the Divorce Decree and the Order themselves.  The age, health, intelligence,

24

and experience of the spouses are not influential in suggesting any overreaching.  The bargaining positions of the parties similarly shows no complicating circumstances.  There is no allegation or evidence of any misrepresentation by either party during the Divorce Proceeding.  Similarly, neither Lawrence nor the Debtor contend that Lawrence had any knowledge of the Debtor's inability to fulfill the terms of the Divorce Decree or the Order.  Accordingly, the Court finds no evidence of overreaching by either party here.

b.  The Parties' Financial Situation

Courts give consideration to "prior work experience and abilities of the parties, their physical health, potential earning power and business opportunities, and correspondingly their probable need in the future."  *In re Austin*, 271 B.R. at 107-08.  In the present case, these factors weigh in favor of Lawrence.  The Debtor enjoyed stable employment at Anheuser-Busch as a lab technician throughout the Divorce Proceeding, earning approximately $88,000.00 annually with his overtime compensation at the end of the marriage, and approximately $100,000 (including overtime) presently.  He has no discernable health issues.

Lawrence, in contrast, was unemployed throughout the Divorce Proceeding and has not worked since approximately 2002.  While no evidence was adduced regarding Lawrence's prior work experience, the unrebutted evidence that she suffers from serious physical disability that in all likelihood will preclude her future employment weighs in her favor, as does the fact that Lawrence was awarded primary custody of the parties' minor child upon entry of the Divorce Decree. Accordingly, the Court finds that the parties' financial circumstances at the time the Divorce Decree and Order were entered favor a finding that the contested portions of the Lawrence Claim constitute support.

### c. The Role of the Obligations

When evaluating the role an obligation is intended to fulfill, such analysis can be divided into aspects that must be addressed for each contested component of the claim (such as the parties' past and future circumstances; whether the obligation allocates debt or divides property; and whether the obligation was intended to provide for basic necessities), and aspects related to the marriage, which are applicable to the Lawrence Claim *en toto*. Regarding the marriage, courts examine how long the parties were married; any evidence of fault in the marriage; whether the parties have any children; and the parties' lifestyle during the marriage. *Id*. at 108 (citing *In re Catron*, 164 B.R. at 919). The Divorce Decree provides the Debtor and Lawrence were married on July 3, 1998, and last cohabited on September 4, 2010. Divorce Decree at 1. They have one child, of whom Lawrence has primary custody. In this mutually hostile divorce, the scant evidence here precludes any assessment of fault on the part of the Debtor or Lawrence, other than to observe these former spouses appear destined for eternal combat. There is likewise no evidence regarding the parties' standard of living during their marriage. The Court notes that the Debtor and Lawrence owned two homes at the time the Divorce Decree was entered, with one home apparently serving as a rental property. To the extent these findings impact the analysis of each of the contested elements of the Lawrence Claim, they will be addressed below.

### 2. Application of the *Catron* Factors to the Each Contested Element of the Lawrence Claim

In this case, with the lack of any voluntary agreement between the Debtor and Lawrence, an analysis of the governing written documents, the Divorce Decree and the Order, provides the greatest insight for determining whether all, or some portion, of the contested Lawrence Claim components are in the nature of alimony, maintenance, or support. In this unprecedented factual

scenario, the Court is charged not with assessing the parties' intent as manifested in the controlling documents, but rather, with discerning the state court's reasoning in reaching the determinations embodied in the Divorce Decree and Order.  *See Long v. West* (*In re Long*), 794 F.2d 928, 931 (4th Cir. 1986) ("In this case, the parties submitted the issues of alimony and property division to the Georgia jury.  Consequently, the issue before this court becomes a question of what the Georgia jury intended the $65,000 lump-sum award to be.") (citing *In re Coil*, 680 F.2d 1170, 1172 (7th Cir. 1982)); *Beaton v. Zerbe* (*In re Zerbe*), 161 B.R. 939, 941 (E.D. Va. 1994) ("In a case where a factfinder such as a judge or jury makes the decision that one party must pay the other's attorney's fees, it is the intention of the finder of fact, not of the parties, that controls."); *In re Baker*, Case No. 12-01090-8-SWH, 2012 WL 6186683, at *3 (Bankr. E.D.N.C. Dec. 12, 2012) ("If the claim arose from a court order, the issue is whether the court issuing the order intended for the obligation to be in the nature of support."); *Monsour v. Monsour* (*In re Monsour*), 372 B.R. 272, 281 (Bankr. W.D. Va. 2007) ("Under federal bankruptcy law, the critical determination in classifying indebtedness as support or division of property is the intent of the parties at the time of the execution of the separation agreement.  The intent of the trier of fact is dispositive when the issue of alimony, support and division of property is before a judge or jury.  If proof of intent is clear, then the determination of intent will control the classification of the obligation.") (citations omitted).

The Court's analysis is made more difficult by the absence of any portion of the record in the state court, save the resulting Divorce Decree and Order.  Neither party tendered into evidence any transcripts, deposition records, reports, exhibits, or pleadings from the Divorce Proceeding.  Neither parties' Divorce Proceeding counsel testified at trial.  Even certain other orders, mentioned in the Order and that were apparently interim in nature, are unseen by this Court.  The lack of any

additional portion of the record is especially concerning as the Order provides that the May 28, 2014

hearing "was not an evidentiary hearing, but a hearing to clarify the Court's previous rulings on

equitable distribution at the hearings on May 28, 2013, and July 16, 2013." Order at 1. Neither

party enlightened the Court regarding whether the Order was prepared by the state court or one or

both of the parties' counsel. Given these circumstances, consideration of the actual language and

substance of the Divorce Decree and Order provides the best source of information for resolving the

issues.[17] Each of the contested elements of the Lawrence Claim are considered separately in this

regard.

### a. The Tax Division

In paragraph 4 of the Order, Lawrence was awarded a judgment of $2,330.00. Order at 2.

This obligation, which is provided for only in the Order, is described therein solely as "Division of

2010 tax refunds." The Order provides no further detail. Other than Lawrence's testimony—

applicable to the totality of her claim—that the funds were necessary for her support, and the

Debtor's characterization in his Schedule F filed with his petition that the obligation resulted from

a "property settlement," neither party offered any additional explanation for this obligation. The

meager description of this obligation, as it is solely contained in an order entitled "Equitable

Distribution Order," does not support a finding that the Tax Division is in the nature of alimony,

---

[17] Pursuant to Virginia Code § 20-107.3(E), when making equitable distribution determinations, Virginia state courts must consider ten (10) enumerated statutory factors, in addition to any other factors the court deems appropriate under the circumstances of the case. Va. Code Ann. § 20-107.3(E) (2015). These factors include the duration of the marriage; contributions of each party to the family; the age and physical condition of the parties; and the parties' debts. *Id.* § 20-107.3(E)(1), (3), (4), (7). While the statute commands the state court to consider these factors, the Order is silent regarding the state court's consideration of them in the instant matter. In any event, the factors are not binding on this Court's consideration in light of the requirement that the Court undertake the analysis herein pursuant to federal bankruptcy law, not state law. *See In re Johnson*, 397 B.R. 289, 296 (Bankr. M.D.N.C. 2008).

maintenance, or support.  Accordingly, Lawrence has failed to meet her burden of proving that the

Tax Division represents a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(5).

### b.  The Retirement Account Division

Paragraph 5 of the Order awards Lawrence a total of $56,500.00 from the Debtor's

Retirement Account with Anheuser-Busch, LLC, and his Individual Retirement Accounts.  More

detailed in the description of this obligation, the Order provides: "The Plaintiff [Lawrence] is

awarded a total of $56,500.00 as her equitable 50% marital share of the Defendant's Retirement

Account with Anheuser-Busch and the three IRA's."  *Id*.  While the Order fails to provide  a

deadline for payment of this sum, whether it must be paid in a lump sum, or whether any tax

ramifications may befall Lawrence as a result of the payment, this obligation plainly appears to be

in the nature of a property division and not in the nature of alimony, maintenance, or support.  While

Lawrence testified she considered the Retirement Account Division to be in the nature of support

and that she needed these monies to maintain her lifestyle, this specific obligation, being described

plainly by the state court as Lawrence's "equitable 50% marital share" of the retirement accounts,

certainly appears to be a property division between the Debtor and Lawrence.  Accordingly, the

Court concludes that the Retirement Account Division is dischargeable pursuant to 11 U.S.C. §

523(a)(5).

### c.  The Education Fund Reimbursement

The Debtor was ordered to reimburse the Education Fund belonging to L.E.C. in the amount

of $12,750.00.  *Id*. at 3.  The Debtor was to begin reimbursing the fund on January 1, 2015, with a

payment of $1,000.00; payments were to continue in that amount every six (6) months, on June 1

and January 1 of each year thereafter, until L.E.C. turns eighteen (18) in October 2019, when any

29

remaining unpaid balance is due and payable in full. *Id.* Pursuant to the Order, Lawrence's mother, Ms. Roberts, is the custodian of the Education Fund. *Id.* The Order restricts the usage of the Education Fund for "post high school graduation advanced studies at college or vocational training and degrees or certificates." *Id.*

The Debtor testified he withdrew money from the Education Fund to pay support to Lawrence and for his living expenses. Lawrence's mother testified she and her now-deceased husband established and made contributions to the Education Fund for L.E.C., their granddaughter. Tr. at 97. No documentary evidence concerning the Education Fund was introduced. However, the language of the Order clearly states the purpose of the fund—to provide a source of funds for L.E.C.'s post-secondary education—especially when coupled with the requirement that it be repaid in full at the time L.E.C. turns eighteen (18) in 2019, which will presumably be shortly before or after L.E.C. graduates high school. Thus, the Court finds that the Education Fund and the reimbursement thereof were intended to be for the support and maintenance of L.E.C., the minor child of the Debtor and Lawrence, and not a property division. Accordingly, the Court finds the Education Fund Reimbursement is in the nature of support and is not discharged pursuant to 11 U.S.C. § 523(a)(5).

### d. The Foreclosure Avoidance

The Debtor was ordered to reimburse Lawrence $12,923.76 "for the foreclosure avoidance costs paid to Glasser & Glasser," and Lawrence was awarded a judgment in this amount. Order at 3. Other than noting that the foreclosure avoidance related to property located at 3986 Bournemouth, Williamsburg, Virginia ("Bournemouth Property"), *id.*, there is no further description of this provision in the Order. The evidence on this obligation is also scant. The Divorce Decree

makes this provision with respect to the Bournemouth Property: "Pursuant to the *Pendente Lite* Order of April 6, 2011, [the Debtor] is to make and keep current the mortgage on the following homes: 3986 Bournemouth Bend and Fenwick Hills, all located in Williamsburg, Virginia." Divorce Decree at 5.[18]  The Order further provides that Lawrence "shall have as her specific real property the marital residence located at 3986 Bournemouth, Williamsburg, Virginia." Order at 3. Finally, pursuant to the Order, Lawrence assumed responsibility for the mortgage on the Bournemouth Property as of July 1, 2013. *Id.* at 3-4. The Debtor received possession of the second home pursuant to the Order. *Id.* at 4.[19]

Lawrence testified that her house had been the subject of foreclosure proceedings on multiple occasions because the Debtor failed to pay the mortgage; however, she did not elaborate further as to when these instances occurred or how the foreclosures were avoided. Despite the absence of further explanation in the Order or by testimony, the sole logical explanation for the obligation of the Foreclosure Avoidance is that, at some point after entry of the Divorce Decree but prior to entry of the Order, the Debtor must have failed to timely pay the mortgage on the Bournemouth Property, in which Lawrence lived and which constituted the former marital residence of the parties. Also logical is that Lawrence advanced monies to prevent the foreclosure of the mortgage on this property. As the Bournemouth Property was the residence of Lawrence and presumptively her daughter of whom she had primary custody, maintaining the residence would certainly be in the nature of support and maintenance, not only of Lawrence but also the parties' minor child. While

---

[18]  The referenced *Pendente Lite* Order was not offered into evidence by either party in this matter.

[19]  The Divorce Decree refers to this property as "Fenwick Hills," *see* Divorce Decree at 5, while the Order refers to the address of this property as 3483 Fenwick Drive. Order at 4.

the evidentiary trail here is somewhat cryptic, it appears the Foreclosure Avoidance was derivative of the Debtor's failure to maintain his obligation contained in the Divorce Decree to pay the mortgage on the residence of Lawrence. Therefore, the Court finds the Foreclosure Avoidance is in the nature of support and, as such, is not dischargeable pursuant to 11 U.S.C. § 523(a)(5).

### e. The Lytle Title Reimbursement

The Order directs the Debtor "to reimburse [Lawrence] $7,500.00 for Lytle Title Escrow"; accordingly, Lawrence was awarded a judgment in that amount. *Id.* at 3. The Order does not further elaborate on the nature of this debt or the purpose for which these monies were spent. The parties' exhibits also fail to enlighten regarding this obligation, including why and how it arose and the property to which the obligation relates. The only mentions of this obligation in the testimony were by the Debtor, who described the obligation as an "escrow issue," Tr. at 41, and "equity from a home we sold." *Id.* at 86. There is no contradictory evidence in the record, other than Lawrence's general assertion that all of the obligations owed by the Debtor arising from the Order were intended to be support and were needed for her subsistence. Given its apparent origin as somehow relating to real estate, and with no evidence contrary to the Debtor's succinct description as equity from a home sale, the Court must conclude that Lawrence has failed to carry her burden of proof to show this obligation is in the nature of alimony, maintenance, or support. Therefore, the Court finds that the Lytle Title Reimbursement represents a dischargeable debt pursuant to 11 U.S.C. § 523(a)(5).

### f. The Equity Difference Payment

As set forth above, Lawrence was awarded the property located at 3986 Bournemouth, Williamsburg, Virginia, and the Debtor was awarded possession of the property located at 3483 Fenwick Drive, Williamsburg, Virginia, pursuant to the Order. Order at 3-4. The Debtor was

ordered, in paragraph 11 of the Order, to pay Lawrence $58,000.00 "representing the difference in the equity between the two properties . . . based upon the evidence and valuations presented during the court hearings." *Id*. at 4.  There is no further description of this obligation in the Order.  The award of the respective residences to the parties in paragraphs 9 and 10 of the Order certainly are in the nature of a property division.  Paragraph 11 of the Order is a continuation of the property division set forth in paragraphs 9 and 10, and it clearly appears to have been the state court's intention to equalize the value of the divided property between the Debtor and Lawrence by ordering the Equity Difference Payment.  While  Lawrence asserts her need for payment of this obligation for her maintenance, the Equity Difference Payment does not appear to be in the nature of alimony, maintenance, or support.  Rather, this payment constitutes a property division between the Debtor and  Lawrence.   Accordingly,  the  Court  concludes  that  the  Equity  Difference  Payment  is dischargeable pursuant to 11 U.S.C. § 523(a)(5).

### g.  The Rental Income Payment

Paragraph 12 of the Order requires the Debtor to pay Lawrence $1,600.00, which amount "represent[s] a balancing of the imputed rental income" for the Bournemouth Property and the Fenwick Drive property.  *Id*. at 5-6.  The state court made clear that the imputation of rental income was part of the division of the parties' real property, as contained in paragraphs 9, 10, and 11 of the Order, acknowledging in paragraph 11 that "[t]he Court has previously considered and ruled all credits or reductions in principal have been taken into consideration and there will be no further reductions or credits other than recited in paragraph 12 [concerning the imputed rental income]." *Id*. at 4.  The concomitant provisions of paragraphs 9, 10, 11, and 12 of the Order constitute the equalization of the value of the two real properties divided among the Debtor and Lawrence.  Thus

the Rental Income Payment award was plainly intended by the state court to be in the nature of a

property division.  Therefore, the Court finds that the Rental Income Payment does not constitute

alimony, maintenance, or support under 11 U.S.C. § 523(a)(5), and, thus, is dischargeable.

### h.  The Garnishment Payment

According to the Order, a balance remained "due on the original garnishment of March 16,

2012, of $344.48" as of May 28, 2014.  *Id*. at 5.  Lawrence asserted in the Complaint that the

Garnishment Payment related to spousal support. Compl. ¶ 9. Other than this bold assertion, neither

party provided any enlightenment regarding the garnishment, including, given the lack of clarity in

the Order, even who was obligated to pay the supporting obligation.  The mere recital of the balance

due on an otherwise unexplained garnishment is insufficient to support a finding that the

Garnishment Payment represents a nondischargeable debt.  Accordingly, the Court concludes that

Lawrence has failed to sustain her burden to show that this obligation is not subject to discharge.

### 3.  Attorney's Fees

Lawrence also seeks an award of and a determination that attorney's fees she has incurred

are in the nature of alimony, maintenance, or support.  These fees consist of the Norment Claim, in

the amount of $3,500.00 related to the Divorce Proceeding, and the Bankruptcy Fees, totaling

$19,530.00.  The Court finds that neither claim represents a nondischargeable obligation for the

reasons that follow.

First, the Complaint fails to set forth a sufficient claim for the Norment Claim.  The

requirements regarding the sufficiency of a pleading are set forth in Federal Rule of Civil Procedure

8, as incorporated by the Federal Rules of Bankruptcy Procedure in Rule 7008.  Rule 8 requires a

pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to

34

relief . . . ." Fed. R. Civ. P. 8(a)(2). Thus, the plaintiff is required to "'give the defendant fair notice

of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema N.A.*,

534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The standard

espoused by Rule 8 "is 'not onerous.' Rather, a complaint meets Rule 8's requirements if, in light

of the nature of the action, the complaint sufficiently alleges each element of the cause of action so

as to inform the opposing party of the claim and its general basis." *Chao v. Rivendell Woods, Inc.*,

415 F.3d 342, 348 (4th Cir. 2005) (quoting *Bass v. E. I. DuPont de Nemours & Co.*, 324 F.3d 761,

764 (4th Cir. 2003)).

The Complaint makes no mention of or reference to the Norment Claim and fails to provide

any notice to the Debtor—let alone the Court—that the Complaint seeks a determination that the

Norment Claim is nondischargeable pursuant to 11 U.S.C. § 523(a)(5). The only mentions in the

Complaint of Lawrence's intent to seek any relief pertaining to any attorney fees are two (2) very

general and casual mentions in paragraph 20 and the Prayer. During the trial, Mr. Lawrence testified

that the Debtor was ordered to pay the Norment Claim and that the amount of the Norment Claim

was not included in the total amount Lawrence claimed to be nondischargeable. Tr. at 48-49.

Lawrence's counsel asserted, in his closing argument, that the amount of the Norment Claim should

be added to the total amount that Lawrence believed to be nondischargeable. *See id.* at 114-15.[20]

These fleeting allusions by Mr. Lawrence and the belated argument by Lawrence's counsel are

wholly and simply insufficient to permit this Court to adjudicate the nondischargeability of the

---

[20] Lawrence's counsel made reference during his closing argument to an amended complaint. *See* Tr. at 114. However, no amended complaint was filed in this adversary proceeding.

Norment Claim.[21]

Even in light of the requirement found in Rule 8(e) that pleadings should "be construed so as to do justice," Fed. R. Civ. P. 8(e), such liberality cannot be expanded here to read the two (2) scant mentions of attorney fees in Lawrence's Complaint as referring to the Norment Claim. As this Court stated in *Smith v. Porter* (*In re Carr & Porter, LLC*), 416 B.R. 239 (Bankr. E.D. Va. 2009), "The liberality of the notice pleading permitted by Rule 8 of the Federal Rules of Civil Procedure is axiomatic; however, the issue at this juncture 'is not a liberal construction issue, but whether the trial court [is] obligated to construct a cause of action from allegations in a complaint filed by a party who was unwilling or unable to plead the cause of action himself.'" *Smith v. Porter* (*In re Carr & Porter, LLC*), 416 B.R. 239, 249-50 (Bankr. E.D. Va. 2009), *aff'd sub nom. Smith v. Porter*, 416 B.R. 264 (E.D. Va. 2009) (alterations in original) (quoting *Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368, 372 (10th Cir. 1989)).

In addition, at no point prior to trial did Lawrence seek leave to amend her Complaint to include the Norment Claim pursuant to Federal Rule of Civil Procedure 15, made applicable to

---

[21] It is of no moment that the Order directed the Debtor to pay Norment the attorney's fees, as opposed to reimbursing Lawrence for the payment of those fees. *Williams v. Williams* (*In re Williams*), 703 F.2d 1055, 1057 (8th Cir. 1983) ("[U]ndertakings by one spouse to pay the other's debts, including a debt to a lawyer for fees, can be 'support' for bankruptcy purposes."); *Beaton v. Zerbe* (*In re Zerbe*), 161 B.R. 939, 940-41 (E.D. Va. 1994) ("[I]t makes no difference in this case that the payment was to be made to an attorney rather than to debtor's ex-wife. The majority of courts have held that debts in the nature of attorney's fees from a divorce are in fact debts for support or maintenance of the ex-spouse and thus non-dischargeable.") (citing *Silansky v. Brodsky, Greenblatt & Renehan* (*In re Silansky*), 897 F.2d 743, 744 (4th Cir. 1990); *Brace v. Moran* (*In re Brace*), 13 B.R. 551, 553 (Bankr. N.D. Ohio 1981)); *Sinton v. Blaemire* (*In re Blaemire*), 229 B.R. 665, 668 (Bankr. D. Md. 1999) ("[T]he identity of the payee is not determinative of whether the debt [attorney fees related to representation of minor children during custody and child support proceedings] is dischargeable."); *see also In re Edinger*, 518 B.R. 859, 866 (Bankr. E.D.N.C. 2014).

36

bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7015.[22]  Further, Lawrence did

not and has not moved to amend her pleadings to conform to the evidence.  Were Lawrence to make

such a motion at this extremely late stage, the mandate of both the language of the rule and of

Supreme Court precedent that leave to amend be freely given, *see Foman v. Davis*, 371 U.S. 178,

182 (1962), may not rescue Lawrence from her transgressions.  This Court has discussed the

standard to be followed to determine whether leave to amend a complaint should be granted, which

includes examination of whether prejudice would befall the opposing party; whether the moving

party has engaged in bad faith; and whether the amendment would be futile.  *See In re Carr &*

*Porter, LLC*, 416 B.R. at 250-53 (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th

Cir. 1986)); *see also Foman*, 371 U.S. at 182.  While the Court provides no advisory opinion on the

matter, it is indisputable that seeking such an amendment only after this Court has raised the issue

---

[22] Rule 7015 of the Federal Rules of Bankruptcy Procedure provides, in pertinent part:

(b) Amendments During and After Trial.

> (1) Based on an Objection at Trial.  If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended.  The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits.  The court may grant a continuance to enable the objecting party to meet the evidence.

> (2) For Issues Tried by Consent. When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings.  A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue.  But failure to amend does not affect the result of the trial of that issue.

Fed. R. Bankr. P. 7015(b) (2015).

would weigh heavily against Lawrence.

As discussed in Section IV.C., fees related to the pursuit of a nondischargeability action are generally awarded only on the basis of language contained in an agreement between the parties or an underlying state court order. Otherwise, the American Rule prohibits the allocation of attorney fees for such an action absent statutory authority. Here, neither the Divorce Decree nor Order make any provision for the payment of attorney fees in the event an enforcement action is necessary. There is no statutory basis in 11 U.S.C. § 523 for this Court to award Lawrence the attorney fees she has incurred to pursue this nondischargeability action, let alone find that those fees too are nondischargeable. Lawrence has not proffered any other basis for an award of attorney's fees here.

However, the Court need not decide these issues with respect to either the Norment Claim or the Bankruptcy Fees, as the lack of detail and specificity and the meager references in the Complaint preclude any such determination. Further, there is no documentation proffered regarding the Bankruptcy Fees, and the only testimony offered thereon also lacked specificity. It is completely unclear as to when the Bankruptcy Fees were incurred or under what circumstances, including whether all or some portion of the fees were expended in prosecution of the Complaint or in other proceedings in this bankruptcy case. Lawrence's failure to sustain her burden of proof regarding attorney's fees that she has incurred either in the Divorce Proceeding or in the instant matter precludes further consideration of the dischargeability of any attorney fees here.

## Summary

For the reasons stated above, the Court finds:

1.    The following obligations owed by the Debtor to Lawrence are in the nature of alimony, maintenance, or support and are not discharged: (1) February 23 Support in the amount of

$1,452.27; (2) April 6 Support in the amount of $4,085.84; (3) February 17 Support in the amount of $6,293.13; and (4) the Medical Expense Reimbursement in the amount of $3,949.12, these debts having been conceded by the Debtor to be nondischargeable.

2.    The Court further finds that the following obligations owed by the Debtor to Lawrence are also in the nature of alimony, maintenance, or support and will not be discharged even if the Debtor successfully completes his Chapter 13 Plan: (1) the Education Fund Reimbursement in the amount of $12,750.00; and (2) the Foreclosure Avoidance in the amount of $12,923.76.  Therefore, the Court finds that the nondischargeable obligations owed by the Debtor to Lawrence (the Conceded Support Payments, plus the Education Fund Reimbursement and the Foreclosure Avoidance) total $41,454.12.

3.    The remaining obligations owed by the Debtor to Lawrence are not in the nature of alimony, maintenance, or support and instead are property divisions.  Accordingly, the Court finds that the following obligations owed by the Debtor to Lawrence will be discharged upon successful completion by the Debtor of his Chapter 13 Plan and his receipt of a discharge pursuant to 11 U.S.C. § 1328(a):  (1) the Tax Division; (2) the Retirement Account Division; (3) the Lytle Title Reimbursement; (4) the Equity Difference Payment; (5) the Rental Income Payment; and (6) the Garnishment Payment.

4.    The Court finds that Lawrence's request for an award of attorney fees and additional request that those fees be declared to be nondischargeable should also be denied.

5.    As the Court has found that the Education Fund Reimbursement represents a nondischargeable debt, the Court finds that the remaining portion of the Motion for Relief from Automatic Stay filed by Lawrence on September 29, 2015, against the Debtor in the

39

underlying bankruptcy case is moot. The Court will enter an order in the main bankruptcy case to this effect.

A separate order will be entered pursuant to Federal Rule of Bankruptcy Procedure 9021 consistent with the findings in this Memorandum Opinion.

The Clerk shall transmit a copy of this Memorandum Opinion to the Plaintiff, Stacy L. Lawrence; Jeffrey L. Marks, counsel for the Plaintiff; the Debtor and Defendant, David Michael Combs; Barry W. Spear, counsel for the Debtor and Defendant; R. Clinton Stackhouse, Jr., Chapter 13 Trustee; and Kenneth N. Whitehurst, III, Assistant United States Trustee.

Entered this 21st day of January, 2016, at Newport News in the Eastern District of Virginia.

STEPHEN C. ST. JOHN
Chief United States Bankruptcy Judge

40